IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| **Elizabeth Gray**, | ) | C/A  2:14-1207-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **American Homepatient, Inc.,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, a former employee of the Defendant,

asserting a claim pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, <u>et</u> <u>seq</u>.

Plaintiff also asserts two state law causes of action.

The Defendant has filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P.,

asserting that Plaintiff's claims are subject to dismissal on several grounds, as well as that it is

entitled to an order striking much of Plaintiff's requested relief.  Plaintiff has filed a memorandum

opposing Defendant's motion, to which Defendant has filed a reply.

Defendant's motion is now before the Court for disposition.[1]

_____

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local
Rule 73.02(B)(2)(g), D.S.C.  The Defendant has filed a motion to dismiss.  As this is a dispositive
motion, this Report and Recommendation is entered for review by the Court.



## Allegations of Plaintiff's Complaint

Plaintiff alleges in the Complaint that she was hired by the Defendant as a documentation specialist on or around July 2007. Plaintiff alleges that the Defendant employs more than fifty employees and is an "employer" within the meaning of the FMLA. Plaintiff further alleges that the Defendant has a handbook which "created a contract between the Plaintiff and the Defendant [ ] for employment." A copy of the Defendant's handbook is attached to the Complaint as Exhibit A. Plaintiff alleges that the Defendant's handbook "uses mandatory language creating a contractual agreement between the Plaintiff and the Defendant [ ] for employment", and that she also "signed a number of documents when she was hired and she entered into a contract of employment". Plaintiff alleges that the "contract" indicated that she would be paid for "working", that she was "efficient and effective in her work", and that even though she "fully performed her contractual obligations", she was terminated.

Plaintiff alleges that her supervisors were Tina Brown and Kelly Bratz. Plaintiff alleges that in or around 2011 her minor daughter was the victim of a sexual molestation, and that criminal charges were brought against the perpetrator. Plaintiff alleges that as a result of this event, she was called to court numerous times and also had to meet with the Solicitor, Victim Advocates, guardian ad litems, and other court personnel. However, Plaintiff alleges that she still met and exceeded the Defendant's expectations in her work performance even with these absences from work.

Plaintiff alleges that she was under a great deal of stress during this time and was diagnosed with uncontrolled high blood pressure and an anxiety disorder. Plaintiff alleges that due

2



to her anxiety and high blood pressure she missed some work days in 2013, for which she applied for FMLA leave. However, Plaintiff alleges that the Defendant denied her FMLA leave request, and that she "was issued a letter in lieu of suspension on April 19, 2011[2] in response to her having to be out of work for court and medical conditions". Plaintiff also alleges that Bratz and Brown communicated to her by text message "in an extremely harassing manner" while she was attending a doctor's appointment, requesting information about her appointment.

Plaintiff alleges that she supplied "her work with copies of subpoenas and/or letters from the solicitor, victim advocates and various others regarding her required court appointments", but that despite having valid court related excuses for her absences, the Defendant "continued to harass the Plaintiff and punish her for being out for court". Plaintiff further alleges that she also provided doctor's excuses for times she missed work due to illnesses, but that despite receiving valid doctor's excuses for her absences, the Defendant continued to harass her and punish her for being out of work, finally terminating her in December 2013.

In her **First Cause of Action**,[3] Plaintiff alleges a state law claim for violation of public policy. Specifically, Plaintiff alleges that her "retaliatory discharge" because of her requesting FMLA relief constituted a "violation of a clear mandate of public policy in the State of South Carolina", and that she is entitled to damages for this violation.

In her **Second Cause of Action,** Plaintiff alleges that her discipline and discharge as

---

[2]This is apparently a typographical error, since Plaintiff previously alleged the year in which she missed work days to be 2013.

[3]This Cause of Action is actually captioned as Plaintiff's "Fourth" Cause of Action in the Complaint, which is apparently a typographical error.

3



a result of her having requested FMLA leave is a violation of that statute. Plaintiff alleges that she requested medical leave under the FMLA as a result of her serious health condition, but that the Defendant refused to provide accommodation to her, and then "retaliatory discharge[d]" her in violation of the FMLA.

In her **Third Cause of Action,** Plaintiff alleges that she had a contract of employment with the Defendant, that she performed her contractual obligations, and that even though she performed her contractual obligations she was terminated in violation of the contract of employment between the Plaintiff and Defendant.

Plaintiff seeks monetary damages, and other specified relief. See generally, Plaintiff's Complaint.

### Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable fact finder to find defendants liable." Vogt v. Greenmarine Holding, LLC, 318 F.Supp. 2d 136, 144 (S.D.N.Y. 2004). For the reasons set forth hereinbelow, the Defendant's motion should be **granted**, in part, and **denied**, in part.



# I.

## (Public Policy Claim)

Defendant asserts that Plaintiff's "public policy" claim is subject to dismissal because Plaintiff has or had existing statutory remedies for her discharge claim. The undersigned is constrained to agree.

In Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee[4] constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". Id, at 216. See also Culler v. Blue Ridge Electric Cooperative, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an

---

[4]Notably, Plaintiff argues that she was *not* an "at will" employee, as she contends she had a contract of employment with the Defendant. See discussion, infra. Except for a very narrow exception, which does not appear to be applicable in this case, the South Carolina "Supreme Court has not expanded the public policy exception beyond contracts like the one in Stiles [v. Am. Gen. Life Ins. Co., 516 S.E.2d 449, 450 (S.C. 1999)]]. See Cunningham v. Anderson County, 741 S.E.2d 545, 556-557 (S.C.Ct.App. 2013); Stiles, 516 S.E.2d at 452 (Toal, J., concurring) ["[T]he [public policy] exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."]. This apparent contradiction, however, does not entitle Defendant to dismissal of this claim, at least at this early stage of the proceedings. In re Building Material Corp. Of America Asphalt Roofing Shingle Products Liability Litigation, Nos. 12-82, 11-2000, 2013 WL 1282223 at * 10 (D.S.C. Mar. 27, 2013)["[P]leadings in the alternative are a common practice in the early stages of litigation."]; cf. Burge Oils, Inc. v. M&F Mktg. Dev. LLC, No. 03-11559, 2005 WL 629489 at * 3 (D.Mass. Mar. 12, 2005)[Denying motion to dismiss unjust enrichment claim even where such claim relied on the "same allegations that support the contract-based claims . . . but states an alternative equitable theory of recovery if the contract claims proved insufficient."]. However, this is not the same issue as whether the claim should be dismissed because Plaintiff has a statutory remedy, discussed herein, infra. See Frazier v. Target Corp., No. 09-1625, 2009 WL 3459221 at * 3 (D.S.C. Oct. 27, 2009)["[C]ourts routinely dismiss tort claims for wrongful discharge that are barred by statutory remedies at the 12(b)(6) stage."].

5



employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; Barron v. Labor Finders of South Carolina, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009), aff'd as modified by, 713 S.E.2d 634 (S.C. 2011); although some other limited situations may also apply. See Barron, 713 S.E.2d at 637 [noting that there may be cases where a public policy wrongful termination claim could be pursued even where a discharge did not itself violate a criminal law or the employer did not require the employee to violate the law], citing to Garner v. Morrison Knudsen Corp., 456 S.E.2d 907 (S.C. 1995) and Keiger v. Citgo Coastal Petroleum, Inc., 482 S.E.2d 792 (S.C.Ct.App. 1997). Plaintiff has failed in the allegations of her Complaint to identify any public policy violation pursuant to this standard.

First, there is no indication in the allegations of Plaintiff's complaint that a violation of a criminal law was involved in this matter. Rather, Plaintiff specifically alleges in her public policy cause of action that because it was unlawful for her employer" to retaliate, dismiss or demote an [  ] employee due to [the] FMLA", the "aforesaid conduct of the Defendant" therefore violated South Carolina and United States laws against retaliatory dismissal and "constitute[d] a violation of a clear mandate of public policy of the State of South Carolina". Complaint, at ¶¶ 31-33. However, even assuming that the Defendant did deny Plaintiff her rights under the FMLA, as Plaintiff alleges, that is not the commission of a crime. Lawson v. South Carolina Dept. of Corrections, 532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a criminal law"]; cf. Eady v. Veolia Transp. Services, Inc., 609 F.Supp.2d 540, 559 (D.S.C. 2009)[Plaintiff failed to show violation of public policy where he claimed that he was terminated for refusing to sign a blank affidavit]; King v. Charleston County School District, 664 F.Supp.2d



571, 584-585 (D.S.C. May 21, 2009); <u>Love v. Cherokee County Veteran's Affairs Office</u>, No. 09-194, 2009 WL 2394369, at * 3 (D.S.C. Jul. 31, 2009)[Granting Rule 12 motion to dismiss where no inference could be drawn from the facts alleged that the Plaintiff's termination was in violation of a criminal law]; <u>Barron,</u> 682 S.E.2d at 273-274 [No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]**;** <u>Merck v. Advanced Drainage System, Inc.</u>, 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Further, even in those limited (and as yet undefined[5]) circumstances where the violation of a criminal statute is not involved, a <u>Ludwick</u> claim still cannot be asserted where there are federal or state statutory remedies available to vindicate the public policies allegedly implicated by a plaintiff's termination, as the South Carolina Supreme Court has explicitly held that "[w]hen a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." <u>Palmer v. House of Blues Myrtle Beach Restaurant Corp.</u>, No. 05-3301, 2006 WL 2708278 at *3 (D.S.C. Sept. 20, 2006) (citing <u>Lawson</u>, 532 S.E.2d 259); <u>see</u> <u>Barron</u>, 713 S.E.2d at 637 [noting that, even where an at-will employee might otherwise have a public policy wrongful termination claim even when no criminal violation is involved, "[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination"]. Here, Plaintiff has or had a statutory remedy for her alleged wrongful termination claim under the FMLA, as well as under state law pursuant to the South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1-13-90, <u>et</u> <u>seq</u>. See <u>Washington v.</u>

---

[5]<u>See</u> <u>Barron</u>, 713 S.E.2d at 637-638.



Perdue Farms, Inc., No. 07-3552, 2009 WL 386926 (D.S.C. Feb. 13, 2009) [Dismissing public policy claim where employer purportedly denied employee's request for FMLA leave, which neither violated a criminal law nor required the employee to do so]; Jefferson v. Chestnut Group, Inc., No. 08-3728, 2009 WL 302312 at * 2 (D.S.C. Feb. 6, 2009)[Dismissing state public policy claim where Plaintiff clearly had a potential remedy under South Carolina Human Affairs Law and Title VII].

In an attempt to save this claim from dismissal, Plaintiff argues in her response brief that she was actually terminated for requesting time off to comply with court mandated appearances, and that it is a "question of fact as to whether the Defendant's actions were in violation of public policy". However, the Defendant correctly notes in its reply brief that that is *not* the public policy claim Plaintiff alleges in her Complaint. While Plaintiff does allege in the "Statement of Facts" portion of her Complaint that she was called to court "numerous times" because of the criminal case involving her daughter, and that she had supplied copies of subpoenas and/or letters regarding her required court appointment to her employer; see Complaint, ¶ ¶ 16, 17, 24, 25; Plaintiff's public policy cause of action does not assert any claim with respect to her court appearances. Rather, it is based on Plaintiff's requested relief "due to the FMLA". Complaint, at ¶ ¶ 31-33.

In any event, Plaintiff has failed to establish a public policy claim for failure of an employer to grant time to employees to *voluntarily* attend court cases or proceedings, while South Carolina law provides a specific statutory remedy for an employee against an employer for dismissal of the employee for complying with a subpoena to testify in a court proceeding. See S.C.Code Ann. § 41-1-70, as amended. Plaintiff therefore has a statutory remedy if she was terminated for complying with a subpoena to appear at her daughter's court proceedings, if that is what she is alleging occurred. Frazier, 2009 WL 3459221 at * 3 [dismissing plaintiff's public policy wrongful

8



discharge claim because she had a cause of action available under S.C. Code § 41-1-70]; <u>Stiles v. Am. Gen. Life Ins. Co.</u>, 516 S.E.2d 449, 452 (S.C. 1999) ["[T]he <u>Ludwick</u> exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where not other reasonable means of redress exists."]; <u>Palmer</u>, 2006 WL 2708278, at * 3 [[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination"].

In sum, as Plaintiff has a statutory remedy for her retaliatory termination claim, she may not pursue a separate state law public policy/wrongful termination cause of action.  <u>Palmer</u>, 2006 WL 2708278, at * * 3 and 5; <u>Ramsey v. Vanguard Servs, Inc.</u>, No. 07-265, 2007 WL 904526 at *1 (D.S.C. Mar. 22, 2007); <u>Dockins v. Ingles Markets, Inc.</u>, 413 S.E.2d 18, 19 (S.C. 1992); <u>see</u> <u>Merck</u>, 921 F.2d at 554 [The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].  The Defendant is therefore entitled to dismissal of Plaintiff's First Cause of Action. <u>Zeigler v. Guidant Corp.</u>, No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The <u>Ludwick</u> exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."] (quoting <u>Stiles v. American General Life Ins. Co.</u>, 516 S.E.2d 449, 452 (S.C. 1999)).

## II.

### (FMLA Claim)

The Family and Medical Leave Act provides that covered employees are entitled to a total of twelve (12) work weeks of leave during any twelve (12) month period for family and health related matters, as well as a right to be restored to the position of employment held by the employee



when the leave commenced, or to an equivalent position. 29 U.S.C. §§ 2612, 2614. The FMLA also

protects employees from discrimination or retaliation for exercising their rights under that statute.

29 U.S.C. § 2615(a)(1) and (2). Stated another way,

> [t]he FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.

Carr v. Mike Reichenbach Ford Lincoln, Inc., No. 11-2240, 2013 WL 1282105 at *6 (D.S.C. Mar.

26, 2013)(quoting Gleaton v. Monumental Life Ins. Co., 719 F.Supp.2d 623, 633, n. 3 (D.S.C.

2010)); Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3rd Cir. 2006).

The Defendant has argued for dismissal of Plaintiff's FMLA claim under both the

interference and retaliation frameworks. While case law appears to allow the Plaintiff to pursue both

an interference claim and a retaliation claim simultaneously under the facts alleged, at least at this

early stage of the proceedings; cf. Reid v. Smithkline Beecham Corporation, 366 F.Supp.2d 989, 998

(S.D.Cal. 2005) [holding that claim that employee was terminated as a result of requesting and taking

FMLA protected leave was properly analyzed as an interference cause of action]; Miller v. Pilgrim's

Pride Corporation, No. 5-05-cv-64, 2007 WL 2007548, * 8 (W.D.Va. July 6, 2007) [holding that

taking FMLA leave can be a protected activity sufficient to establish an FMLA retaliation claim];

Blankenship v. Buchanan General Hosp., 140 F.Supp.2d 668, 672 (W.D.Va. 2001) ["[T]he courts

have recognized that the FMLA also provides a cause of action for retaliatory discharge for receiving

FMLA leave."]; the framework for analyzing interference and retaliation claims under the FMLA

is different. To proceed with her interference claim, Plaintiff need only have alleged facts sufficient

to state a plausible claim that her requesting and/or taking of FMLA protected leave "constituted a

10



negative factor in the decision to terminate her." Reid, 366 F.Supp.2d at 998. "'[A]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.'" Sommer, 461 F.3d at 399 (quoting Callison v. City of Philadelphia, 430 F.3d 117, 120 (3rd Cir. 2005)); Wysong v. Dow Chem. Co., 503 F.3d 441, 446 (6th Cir. 2007). To establish a retaliation claim, however, a Plaintiff must proceed (absent direct evidence) through the framework for analyzing retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. See Dodgens v. Kent Manufacturing Company, 955 F.Supp. 560, 565-566 (D.S.C. 1997); see also discussion of FMLA retaliation claim, infra.

**Interference Claim**. "To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: (1) [s]he was an eligible employee, (2) [her] employer was covered by the Act, (3) [s]he was entitled to leave under the FMLA, (4) [s]he gave [her] employer adequate notice of [her] intention to take leave, and (5) the employer denied [her] FMLA benefits to which [s]he was entitled." Carr, 2013 WL 1282105 at * 7 (quoting King v. Blanchard Mach. Co., No. 10-3219, 2012 WL 4586177 at * 5 (D.S.C. Sept. 28, 2012)); Makowski v. SmithAmundsen LLC, 662 F.3d 818, 825 (7th Cir. 2011); see Taylor v. Progress Energy, Inc., 493 F.3d 454, 457 (4th Cir. 2007)[Under the FMLA, an employee has a "right to take a certain amount of unpaid medical leave each year and the right to reinstatement following such leave."].

Plaintiff alleges that she was hired by the Defendant on or around July 2007 and worked for the Defendant until on or about December 2013, which are sufficient allegations to infer that she is an eligible employee under the FMLA. Wolman v. Tose, 467 F.2d 29, 33, n. 5 (4th Cir. 1972)["Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the Court to infer that all of the required elements of the cause of



action are present."].  Plaintiff also specifically alleges that the Defendant employs fifty or more employees and is an employer covered by the Act, that she was entitled to leave under the FMLA, that because she was having to miss work days in 2013 due to her anxiety and high blood pressure she applied for FMLA leave, and that the Defendant denied her request for FMLA leave.  Complaint, ¶¶ 4, 5, 6, 8, 19, 20, 21, 36, 37.  Plaintiff further alleges that even though she provided the Defendant with valid doctor's excuses, her superiors harassed and punished her for being out of work, causing her to lose pay and benefits, and that she was ultimately terminated for requesting FMLA leave.  Id., ¶¶ 20, 22, 23, 26, 27, 28, 38, 40, 41, 42.

Liberally construed, and drawing all reasonable factual inferences in favor of the Plaintiff, these allegations are sufficient to state a plausible FMLA interference claim to survive a Rule 12 motion to dismiss.  Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012) [To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Reid, 366 F.Supp.2d at 998 [holding that claim that employee was terminated as a result of requesting and taking FMLA protected leave was properly analyzed as an interference cause of action].

Therefore, the Defendant is not entitled to dismissal of Plaintiff's FMLA interference claim at this time.  See Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010) [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; see also Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all



well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988); see also Vogt, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"].

Retaliation Claim. As previously noted, a retaliation claim under the FMLA is analyzed under the same standards as are applied to a Title VII retaliation claim. See Laing v. Federal Express Corp., 703 F.3d 713, 723 (4th Cir. 2013); Dodgens, 955 F.Supp. at 565-566 [appropriate analysis for retaliatory discharge under FMLA is that provided for Title VII for retaliatory discharge].<sup>6</sup> Pursuant to this standard, "[t]he employee is initially required to establish

---

<sup>6</sup>This would apparently include claims that an employer fired an employee for taking FMLA leave, even though that would seem to be the same claim just discussed as an "interference" claim. Blankenship, 140 F.Supp.2d at 672 ["E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions....Based on this, the courts have recognized that the FMLA also provides a cause of action for retaliatory discharge for receiving FMLA leave."] (internal citations omitted).



a prima facie case of retaliation by a preponderance of the evidence.[7]  Such a prima facie case consists of three elements:  (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997); Blankenship, 140 F.Supp.2d at 674.

        Plaintiff alleges in her Complaint that she engaged in protected activity by applying for FMLA leave when she had to be out of work in 2013 due to her anxiety and high blood pressure. Complaint, at ¶ ¶ 19, 20, 41.  See Miller, 2007 WL 2007548, * 8 [holding that taking FMLA leave can be a protected activity sufficient to establish an FMLA retaliation claim].  Plaintiff also alleges that the Defendant took adverse employment actions against her by denying her request for FMLA leave, and then harassing her while she was attending a doctor's appointment and punishing her for being out of work, thereby causing her to lose pay and benefits including but not limited to health benefits, and then discharging her in December 2013 for requesting and taking leave.  See generally, Complaint, ¶ ¶ 20, 21, 23, 26, 27, 28, 36, 38, 41, 43.

---

[7]For purposes of the Defendant's motion to dismiss, Plaintiff's allegations need only raise a reasonable expectation that a prima facie case can be established.  See Gladden, 2012 WL 3009275 [To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL 6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002); Austen, 709 F.Supp.2d at 172 [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]].



These allegations are sufficient for purposes of a motion to dismiss to state a "plausible" claim that the Defendant took an adverse employment action against the Plaintiff, and that a causal connection exists between Plaintiff's alleged protected activity and the alleged adverse actions. Cf. Turner v. McKesson Corp., No. 12-2053, 2012 WL 3542240 at * 6 (N.D.Ala. Aug. 10, 2012)["Although the Complaint contains a number of alleged acts that purport to show indirect evidence of defendant's retaliation against plaintiff, the court need not look any further than plaintiff's statement that her merit adjustment was prorated to a lower rate 'directly as a result' of her taking FMLA leave."] [Motion to Dismiss]; Heady v. US Enrichment Corp., 146 Fed.Appx. 766, 770-771 (6th Cir. 2005) ["[T]emporal proximity is sufficient to meet the low burden required to establish a prima facie case of retaliation in violation of the FMLA...."]; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) [the burden of establishing a prima facie case is not onerous]. Therefore, the Defendant is not entitled to dismissal of Plaintiff's FMLA interference claim at this time. Slade, 407 F.3d at 248 ["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"]; Wolman, 467 F.2d at 33, n. 5 ["Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the Court to infer that all of the required elements of the cause of action are present."]; see also Vogt, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"].



## III.

### (Breach of Contract Claim)

In her Third and final Cause of Action, Plaintiff asserts a state law claim for breach of contract.  Defendant asserts that this claim is subject to dismissal because Plaintiff has failed to set forth factual allegations sufficient to give rise to a plausible claim that she had an employment contract with the Defendant.

The necessary elements of a contract are an offer, acceptance, and valuable consideration.  Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993).  With respect to employment, however, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Rule 12 Motion to Dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .".  Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment"].

Plaintiff does not assert that she had an actual employment contract with the Defendant; rather, she contends that the Defendant's employee handbook contained sufficient

16



"mandatory" language to make its terms an enforceable "contract". See Complaint, ¶ ¶ 9, 10; cf. Grant v. Mount Vernon Mills, Ins., 634 S.E. 2d 15, 20 (S.C.Ct.App. 2006)[Employer can alter an employee's at-will status through mandatory language in a handbook]. In her Complaint, Plaintiff alleges that the Defendant's employee handbook "uses mandatory language creating a contractual agreement between the Plaintiff and the Defendant [ ] for employment", that the "contract indicated she would be paid for working" and "promised benefits to the Plaintiff", that she was "efficient and effective in her work", and that despite fully performing her "contractual obligations", the Defendant breached her employment contract by terminating her. Complaint, ¶ ¶ 10, 11, 12, 13, 47, 48. The Plaintiff has also attached a copy of the Defendant's Employee Handbook to her Complaint as Exhibit A.[8]

After careful review of the allegations of the Complaint, the undersigned concludes that Plaintiff has failed to plead sufficient factual allegations to state a plausible claim that she had an employment contract with the Defendant. First, Plaintiff has failed to allege in her complaint any specific language from the employee handbook to establish a plausible claim that her at-will employment relationship was altered by any such language. See Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) [Plaintiff has burden of alleging facts sufficient to state all the elements

---

[8]In addition to factual allegations of the Complaint, the Court may also consider as part of the review of a 12(b) motion any document that is "integral to and explicitly relied on in the complaint." Phillips v. LCI International, Inc., 190 F.3d 609, 618 (4th Cir. 1999); Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); White v. VNA Homecare, Inc., No. 11-971, 2012 WL 1435432 at * 1 n. 1 (S.D.Ill. Apr. 25, 2012)[Since the handbook is a document referenced in plaintiff's complaint and is central to her claim, the court can consider it on Defendant's 12(b)(6) motion to dismiss]; McClurkin v. Champion Laboratories, Inc., No. 11-2401, 2011 WL 5402970 at * 2 (D.S.C. Nov. 8, 2011)[Attachment by Defendant of employee handbook did not convert motion to dismiss to a summary judgment motion where Plaintiff referred to employee handbook in her complaint].



of a claim]. Rather, Plaintiff only conclusorily alleges that the employee handbook "uses mandatory language creating a contractual agreement", without citing to any specific language from the employee handbook or referencing to where any such "mandatory" language can be found in the exhibit attached to her Complaint. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"].

Further in addition to reviewing the conclusory and non-specific allegations of the Complaint, the undersigned has also undertaken an independent review of the employee handbook itself (provided to the Court as an exhibit), and does not find any language therein sufficient to establish a plausible claim that Plaintiff had a "contract" of employment by virtue of this handbook. Cf. Small v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987)[only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; Grant, 634 S.E.2d at 21-22; Storms v. Goodyear Tire & Rubber Co., 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; Horton v. Darby Electric Co., Inc., 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary procedure did not alter employee's at-will status]; Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C.Ct.App. 2006) [Permissive language in an employee handbook does not alter an employee's at-will status]. To establish that she had a "contract" of employment with the Defendant, Plaintiff needs factual allegations sufficient to give rise to a plausible claim that she and the Defendant entered into mandatory and binding terms for her employment such as a

18



definite term of employment, buyout provisions, right to severance pay, and other such indices of a contract of employment.  Cf. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status.  Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]; see also Cape v. Greenville School Dist., 618 S.E.2d 881, 883 (S.C. 2005) [Employee employed for an indefinite period of time, rather than for a stated period of time, is presumptively considered an employee at-will].  She has failed to do so.[9]

　　　　　Finally, as part of her argument in her brief (although not alleged in her Complaint), Plaintiff argues that the Defendant's handbook does not contain a disclaimer that meets the requirements of S.C. Code Ann. § 41-1-10.[10]  However, the Defendant correctly notes that the handbook does contain, on page 3, the following language in bold type: "Neither this handbook nor

_____

[9]While Plaintiff does argue in her response brief that "she had to make a commitment to work for the Defendant for a specified period of time"; Brief, p. 10; this allegation is nowhere contained in the allegations of the Complaint, nor has Plaintiff pointed to where any such requirement or commitment is contained in the employee handbook.

[10]S.C.Code Ann. § 41-1-10 provides:

It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent . . . shall not create an express or implied contract of employment if it is conspicuously disclaimed.  For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee.  For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document.  Whether or not a disclaimer is conspicuous is a question of law.



any provision in this handbook constitutes a contract of employment or any other type of contract". See Court Docket No. 1.1, p. 4. Defendant further points out that the handbook also contains several other provisions reiterating that employees are employees at-will; see Exhibit [Handbook], pp. 6, 8, 30; as well as an "Acknowledgment of Receipt" section again stating that the handbook is not a contract and that employment is at-will, and where the employee has to sign to acknowledge receipt. Id., p. 38.[11] Hence, even assuming Plaintiff's claim that the handbook did not contain a disclaimer meeting the requirements of § 41-1-10 to be true (because it was not on the first page and was not underlined), this fact does not establish a plausible claim that a contract existed. While a clear compliance with the terms of the state disclosure statute would obviously be important, it is not required (and certainly does not establish the existence of a contract) if the employee handbook at issue otherwise does not contain mandatory language sufficient to alter the presumption in South Carolina of an at-will employee relationship. Cf. Grant, 634 S.E.2d at 20; Westmoreland v. AB Beverage Co., Inc., No. 05-3475, 2007 WL 274950 at * 13 (D.S.C. Sept. 20, 2007).

Therefore, the Defendant is entitled to dismissal of this cause of action. Amazon v. PK Management, LLC, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); cf. Williams v. Intier Automotive Interiors of America, Inc., No. 09-1144, 2010 WL 5811848 (D.S.C. Nov. 5 2010); see also Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Perrine, 2011 WL 3563110, at * 2 [In order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the

---

[11]Although the form handbook provided as an exhibit is an unsigned copy, Plaintiff has not argued that she did not see, or failed to sign, this acknowledgment in her own handbook.



existence of an employment contract beyond the at-will relationship"]; <u>Prescott</u>, 516 S.E.2d at 927, n. 8 [In South Carolina, "there is a presumption of at-will employment"].

## IV

### (Claims for Relief)

Defendant also seeks dismissal of Plaintiff's request for punitive damages and "treble" damages for her FMLA claim, arguing that the FMLA does not provide for such relief, as well as dismissal of several claims for relief relating to Plaintiff's state law claims.

If the Court adopts the recommendation set forth hereinabove with respect to Plaintiff's state law claims, her requested relief for those claims will be moot. As for Plaintiff's request for punitive and treble damages for her FMLA claim, Defendant is correct that the FMLA does not provide for this relief. <u>Farrell v. Tri-County Metropolitan Transp. Dist. of Oregon</u>, 530 F.3d 1023, 1025 (9th Cir. June 27, 2008)["It is well-settled that the FMLA, by its terms, only provides compensatory damages and not punitive damages."] (internal quotations omitted); <u>see</u> 28 U.S.C. § 2617(a); <u>see also</u> <u>Alexander v. Carolina Fire Control Inc.</u>, No. 14-74, 2014 WL 3729546 at * 6 (M.D.N.C. July 25, 2014). In any event, as correctly pointed out by Defendant in its reply brief, Plaintiff failed to respond to Defendant's motion with request to these claims. <u>Cf</u>. <u>Stewart Title Guar. Co. v. Sanford Title Servs., LLC</u>, No. 11-620, 2011 WL 5547997, at * 3 (D.Md. Nov. 10, 2011) ["The failure to respond to [a] motion [to dismiss] is tantamount to a waiver of any opposition on the merits"]; <u>Alexander</u>, 2014 WL 3729546, at * 6. Therefore, these requests for relief should be stricken from the Complaint and dismissed.



2em

## **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion to dismiss Plaintiff's First Cause of Action (Violation of Public Policy) and Third Cause of Action (Breach of Contract) be **granted**, and that those claims be **dismissed**.  It is further recommended that the Defendant's motion to dismiss Plaintiff's Second Cause of Action (FMLA Claim) be **denied** at this time for the reasons stated.

Finally, Defendant's motion to strike Plaintiff's requested relief as discussed hereinabove should be **granted**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 24, 2014
Charleston, South Carolina

22



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



23